Okay, next case for argument is West Bend Mutual Insurance v. Schumacher. Mr. Johnson. May it please the Court, I appear on behalf of West Bend Mutual Insurance Company. This appeal addresses the question of the error by the trial court in concluding that the second amended complaint that was filed in this action did not state a claim for relief for legal malpractice. This was done in the face of the following important allegations in the second amended complaint. That the matter, the workers' compensation matter that the defendants were hired to defend was not adequately investigated factually, was not adequately investigated medically. That on the day that the stipulation was entered into, the concession was entered into, August 23, 2006, the defendant was not aware a hearing was going to be conducted. He was unprepared to present witnesses. He was not authorized to make any concession on liability, and the case had not been evaluated properly because of the failure to investigate the medical and factual issues. That day, he conceded liability. The concession of liability as a practical matter required West Bend Mutual to start paying expenses, medical expenses, past disability payments, current disability payments. In the interim, when questions were raised about what had happened, the complaint specifically alleges that the defendants negligently told the plaintiff that they would be at great risk of penalties, overemphasized the potential for penalties as alleged in paragraph 24, and counseled plaintiffs against getting the case reopened to present the defenses because of his, according to the complaint, mistaken, negligently arrived at because of an inadequate investigation, belief that the case was indefensible. So you're alleging that the defendant gave advice directly contrary to the position that they are saying you should have followed now. Correct. It's specifically alleged in the complaint that they told us not to, he counseled the plaintiff against getting the case reopened to present its defenses as he believed the case was indefensible. In addition, the complaint specifically alleges that in the last bastion of trial by ambush, workers' compensation proceedings, where you don't have discovery, before the hearing he revealed the essentials of the defenses to plaintiff's counsel and that in that context, with all of that, West Bend was placed in a position where its ability to defend the claim was compromised, it was being forced to incur expenses it never had to incur, and eventually it was forced to settle the case in a compromised position. In response to that, the defendants have said there was a legal means which they say, I think, created the right to avoid this concession that had been made in August of 2006, reopen the case and contest it. Our position is, for whatever it's worth, that that right is not as clear. The Domogolsky case, for example, that they just cited, that apparently we should have been aware of in 2006, that was never mentioned in rounds of briefing in the district court, never mentioned here, establishes that right. Well, it doesn't. What it says is if the commission elects to decide to deny a claim, even though it's been conceded earlier by the carrier, it has the right to do that. It doesn't say it has to do it. It doesn't say the law mandates it. It doesn't say it will do it. It just says it has the discretion on a question of law to do that. But even if you take their position, the district court in the face of all of these allegations concluded that the complaint did not state any basis for a claim that any damages had been caused to West Bend. That flies in the face of the specific allegations of the Second Amendment complaint. That flies in the face of all the rules of our pleading. We specifically allege that we were placed in a practical problem and followed the advice of our lawyer that they negligently gave us not to reopen it and that that was not a practical option. And in the face of that, they say we should have done it anyway and that eliminates our case. Okay, relax. You say that Schumacher gave up a defense you had? Paragraph 16 specifically alleged. So this was a defense that you did or did not have to compensate? What he did is, according to the language of the complaint, told the arbitrator that we would accept liability for the workers' compensation claim. The essential issue here is whether the claimant injured his knee in a way, in this episode of climbing up some stairs on a construction site, that caused him to require a knee replacement, which eventually developed many other complications and led to a huge claim, when he had already been diagnosed as needing knee replacement surgery and just hadn't had it done yet. But I thought the issue is whether you had a legal obligation to compensate him before the issue of, well, do you have a duty to compensate before a final decision is made? No. We can choose to, and of course in routine workers' compensation claims, they're paid without being contested all the time. It's obvious it's a work-related injury. But are you saying that Schumacher represented that you were obligated to compensate before the decision? At the hearing, at which one of the issues would have been, was this claim a compensable work-related injury or not, he accepted liability for the workers' compensation claim and thereafter told us, we say now negligently, our workers' compensation claim. When he accepted liability, was he actually agreeing to pay anything or was he just acknowledging that if there was an accident caused by the employer, then of course there would be a compensation? The language under the COMP Act, I'm not a COMP lawyer, accepting liability means you're accepting it as a compensable injury. That created in us, and again, I can tell you... Correct. And then later told us that we should not pursue any remedies to try to reopen and pursue that defense because it would expose us to penalties, because the case was indefensible and that course of action would not work. The course of action, they now say, is the one we should have pursued and which the court concluded meant we weren't harmed at all. The... Counsel, could you address, the defendants say at page 29 of their brief that you pursued a, quote, all-or-nothing strategy before the district court and have shifted gears here. Could you address that specifically? I don't think that's supported by the record at all. The complaint doesn't say it. The issue in the complaint is, were we damaged? The second amendment complaint makes it clear. We've alleged that we had to start paying these expenses because of the advice we'd gotten, the bad investigation, and the unauthorized concession on liability. The rest of that is for trial. They may very well have a mitigation of damages defense if they can convince the judge or the trier of fact eventually that they didn't give the advice that we say they negligently gave and that we should have pursued that action. It might be contributory negligence. This case might end up not being as good as we think it is. That's really irrelevant at this stage, and that's where the district court got lost, is it concluded, I think, that because they think they have a good defense that that meant we didn't have a claim or hadn't stated a claim when, in fact, all one has to do is read the second amended complaint to see there is a whole continuum of negligent conduct which the complaint alleges put us in a position where we were forced to pay expenses, obviously we're incurring additional attorney's fees, which are part of the claim damages, and we were not pursuing reopening because the very defendants who now say we should have been pursuing what I would call reopening this, contesting the liability, said it wasn't a prudent course of action during the time. Now, they may deny that. Presumably you also are taking that advice with a grain of salt after firing them. Well, again, I can only... That's a fact matter. I tried to stick to what's in the second amended complaint, but I will tell you, it took some time. The record shows, I think, that we replaced counsel after a gap of about eight months. But there's a gap of eight months there while I believe it slowly began to dawn on West Bend that something had gone very amiss back in August and perhaps we should have other counsel. But those are all factual evidentiary matters which are really irrelevant to the issue that's before the court today, which is, did we state a claim for relief? Even if they're right on the law, there is still a claim for relief here. It just might not be as good as we think it is. Do you think you can show that if it hadn't been for representations, actions, what have you, by Schumacher, you wouldn't have had to pay workers' compensation? Yes. And on what basis? Because the compensable injury which led to this whole chain of events which resulted in an enormous liability was the need to have knee replacement surgery done. That had already been diagnosed as needed before this incident at work occurred, and it just hadn't been accomplished yet. And no one ever identified any change in the condition of the claimant's knee as a result of this incident where he walked up the stairs at work. And he continued to work without complaint for something in the area of three weeks after the incident. Now, again, we're getting beyond some of the specific allegations of the complaint. But if you're asking me, yes, are we going to have a case that says we had a winner that turned into a loser because of this negligence? Absolutely. Okay, thank you. Thank you. Mr. Gallagher? Good morning. May it please the Court. In this case, in the second amended complaint, West Bend says at paragraph 26 that technically it had the right to present evidence of non-compensability at a subsequent hearing. Technically. What does that mean, technically? The technical matter here is a legal malpractice case. The underlying subject matter is the law. What he means is legally West Bend had the right. It retained a procedural entitlement to present evidence at a subsequent hearing of non-compensability. Don't we have to assume, however, that your clients advised them not to do so because of the practical realities of the workers' compensation system? Yes. I mean, we're not saying that there was a good defense. Mr. Schumacher evaluated the case, and he believed the case was indefensible. What we are saying is that West Bend retained a procedural entitlement to present evidence if it wanted to do so, whether with Mr. Schumacher on the file or after Schumacher was replaced in 2007 with subsequent counsel. If West Bend ever believed it had good defense to defeat the claim at the workers' compensation forum, which is a very pro-workers forum, it had the right to do that. What it is doing now is trying to engage in forum shopping, getting away from a pro-workers arbitrator and a system that is pro-claimant and having the evidence presented in a different forum before a jury and a judge and a court, which isn't really the forum where the claim by Mr. Marzano would have been resolved. Well, what should he have done if he believed that, as he claims to believe, that Schumacher had done a very bad job? What should West Bend have done if it believed that Mr. Schumacher did a bad job? In what way? In evaluating the claim? Whatever. It doesn't matter what. Well, I think it does. No, it doesn't. Suppose as this case is proceeding in this workers' compensation arbitration, West Bend decides that Schumacher is not making a good defense. Replace him and present whatever evidence it believes of non-compensability at its own 19B hearing. What happened in 2006? Mr. Marzano brings a claim for benefits. The claim is disputed by the employer. The employer is not paying temporary total disability and medical. So pursuant to the rules and the statute, Mr. Marzano brings on a petition pursuant to 19B in order to have those TTD and medical benefits paid pending the outcome of the entire case. The way the rules are set up, the arbitrator first attempts to resolve the matter informally. If he cannot do so, if TTD and medical still remain unpaid, he sets the matter for an evidentiary hearing. On the eve of that hearing, Mr. Schumacher rightly or wrongly evaluates the claim, believes it's indefensible, agrees that the TTD and medical will be paid. The statute says an employer's agreement to pay those benefits doesn't preclude the employer from bringing on its own hearing subsequent to section 19B later on in the proceeding. Counsel, the allegation in the complaint is that Schumacher made the representation to counsel for the claimant that plaintiff would accept liability of the workers' compensation claim, not just TTD, not just the medical expenses. That is the allegation, Your Honor, but we know from the certified record of the underlying action that the case remained pending for like three years after that before all of the issues were resolved. So it sounds like you want us to resolve that as a factual matter? No, Your Honor. So we have to assume that Schumacher said we're conceding liability, correct? Yes. I mean, we have to assume for purposes of this motion that Mr. Schumacher said we are conceding liability. What is the reasonable inference to be drawn from that statement given what we know about the case, given the certified record of the underlying action? We know that it was a 19B hearing brought by Marzano for his TTD and medical, not the trial of the entire action, because we know that there was a settlement contract in order in January 2010 dealing with permanent issues that were never addressed during the interim. So when Mr. Schumacher is saying, yes, we will accept liability, that's a difference without distinction from him saying we will pay the TTD and medical. I thought you were trying to tell us there's an important distinction between them. No, no. I mean, what he is saying in 2006, you're saying he's just accepting liability for these. You mean you're saying that he meant he would accept liability for these interim payments? Yes, because that's what was being presented at that hearing. You're saying that was the issue at the hearing. Yes. And part of the entitlement by Mr. Marzano to those benefits if it goes to a contested hearing is his ability to show that it is a work-related injury. I'm sorry. So are you. Do you feel that West Bend delayed too long, stuck with Schumacher too long, that if they thought when he said accepting liability could be interpreted to mean accepting complete liability, not just these interim expenses, is that, are you saying they should have fired him then, not stayed with him? They weren't monitoring him adequately? Well, they could have if they wanted to do something different than what had been done in August of 2006. Now, I haven't seen this issue before, whether if you have a, if you hire a lawyer and he does a bad job, and this is obvious early in the litigation, you can nevertheless say, well, I'll stick with this guy because if I lose, I'll sue him for malpractice. Well, I mean, the viability doctrine of Land v. Greenwood in those cases say that if at the time of the negligent actor omission, you still have your rights, you still have your procedural entitlement under the statute here, no defense has been lost because whatever evidence existed beforehand still exists for West Bend to present later, either with Mr. Schumacher or another lawyer of its own choosing. There's no legal malpractice under Illinois law. Let me back up a second. Does it matter whether he conceded complete liability at the time of that hearing or only liability for the interim payments? I don't think so because if there were a... Okay, I thought you were trying to straddle that. If you don't think it matters, that's fine. What I do want to ask you about, counsel, I understood your brief to be arguing that if a client settles, if a client defendant settles, he effectively waives any right to sue his litigation counsel for malpractice. No, I'm not taking that position. You're not? As I said in my brief, the fact of settlement is not really what matters here. If you have a case where there is... I thought you were arguing about the lost chance theory. Yes, yes. And that somebody who's willing to pay something means that they don't have a malpractice claim. They need to prove a case within the case in an underlying action to show to the satisfaction of the court and jury in this case that they would have won. Hands down, not a penny. They can't show that the malpractice reduced or enhanced the value of the claim against them. That's our position. That's why I don't know why I lost that. Well, actually, that's not the way I understood it. Since you can be held liable if you wind up settling for more than you otherwise would have, right? If there is negligent advice with respect to the ultimate final settlement, then we're not talking about errors in the handling of the litigation. We're talking about errors in the negotiation. Now, does that make any sense? I guess I'm trying to think in terms, for example, of medical malpractice. Because your theory seems to be saying that if the patient can't show that she would have been cured completely, then there can't be a claim against the doctor for poor treatment that made the outcome worse. You're not saying that, are you? No, I think the answer is found in one of the cases that they cite in their reply brief. They cite to this case Thomas v. Bethea, which refers to the law review article that discusses the loss of chance theory, where they say the doctrine applies only when the opportunity to recover fully is irretrievably foreclosed, at page 1494 of the article. That can't be right. That can't be right, right? Oh, that's what the article says. Yeah, but look, it can't be right. Because what if you recover a dollar in your judgment, and if your lawyer had been competent, you would have recovered a million dollars. You're saying that because you got something, you can't sue for your actual damages? No, I think that'd be right. That'd be ridiculous. But I think that here they would need to show that some evidence that could have defeated the claim in 2006 was no longer available to them afterward, because otherwise we're talking about the same body of facts that would have been used to defeat the claim of compensability, and we don't have that allegation here, which is why they can't establish the element of proximate cause. Okay. Well, thank you, Mr. Eleanor. So, Mr. Johnson, do you have any time? You don't have any time, but you have a minute. Just a couple of quick things. The technically versus legal, it's the practical context, including what we knew and didn't know based on what our lawyers told us that determined our course of conduct. We've lapsed many times into arguing things that are not in the record, they're not in the pleadings. There's nothing in the pleadings that the workers' comp system is biased in favor of claimants. That may or may not be true. It's not before the court. I think the law is not what he has said it is. The law, I think, in every state is, I know it is in Wisconsin, that if a lawyer negligently exposes a client to a risk that could have been avoided by proper representation and the client settles that, you have to prove it was caused by the negligence, you settled it reasonably, and that's the damages. That's what's the case here. Second, he said all we risked was for temporary disability and temporary payments. Medical payments. Okay, what of it? If we were, we were still being damaged. And the complaint specifically alleges, as a practical matter, once those payments had been made, we couldn't get them back from the health care providers and the claimant that was paying them. So as a result, I don't think that there's any question about the fact that the court erred. Thank you. Okay, well, thank you very much, Mr. Johnson, and Mr. Delaney as well.